Filed 6/16/23  Souza v. California Gambling Control Commission CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| HARVEY F. SOUZA,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CALIFORNIA GAMBLING CONTROL COMMISSION,<br><br>Defendant and Respondent. | C094470<br><br>(Super. Ct. No. 34-2019-80003287-CU-WM-GDS)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on May 26, 2023, be modified as follows:

1.  In the first full paragraph on page 7 starting with "Souza argues this analysis," replace the citation to *Sander v. Superior Court* and its parenthetical with the following citation and parenthetical, retaining footnote 4:

1

(See *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1192 [argument not raised below in opposition to demurrer deemed forfeited on appeal].)

2.  On page 13, the last paragraph prior to part II of the Discussion starting with "Based on the foregoing," is deleted in its entirety.

This modification does not change the judgment. Appellant's petition for rehearing is denied.

FOR THE COURT:


_____/s/_____
MAURO, Acting P. J.


_____/s/_____
DUARTE, J.


_____/s/_____
BOULWARE EURIE, J.

Filed 5/26/23 Souza v. California Gambling Control Commission CA3 (unmodified opinion)

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| HARVEY F. SOUZA, | C094470 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2019-80003287-CU-WM-GDS) |
| v. | |
| CALIFORNIA GAMBLING CONTROL COMMISSION, | |
| Defendant and Respondent. | |

To resolve an accusation filed by the California Bureau of Gambling Control (Bureau), appellant Harvey F. Souza entered into a stipulated settlement agreement (stipulated settlement) whereby he agreed to the revocation of his license and to pay $2.1 million in penalties and $400,000 in costs. The stipulated settlement included waiver provisions by which Souza waived his right to a hearing on the Bureau's allegations and his right to seek reconsideration, among other things. The Gambling Control Commission (Commission) approved the stipulated settlement and adopted it as

1

the Commission's final decision and order. More than two years later, Souza sought a reduction of the penalty and a refund of more than $675,000 he had already paid.

After the Commission concluded Souza had waived his right to seek a penalty reduction, he filed a petition for writ of mandate (petition) in the trial court. Ultimately, the trial court ruled the petition was barred by the terms of the stipulated settlement and sustained the Commission's demurrer to Souza's action without leave to amend.

On appeal, Souza argues the trial court improperly sustained the Commission's demurrer because (1) the penalties and costs provisions of the stipulated settlement are contrary to California law and public policy, and therefore void; (2) the penalties and costs provisions of the stipulated settlement violate the "excessive fines" clause of the Eighth Amendment; (3) Souza agreed to the stipulated settlement due to "economic duress"; and (4) the stipulated settlement was based on a mutual mistake of law. Souza also argues (5) the trial court should have permitted him to amend the petition. We will affirm the judgment.

BACKGROUND

As partial owner of Seven Mile Casino (Casino) — a 20-table card room in Chula Vista, licensed by the Commission — Souza received a $3 million loan to build a new card room. In return, Souza's creditors received the option to convert the loan into an ownership interest in the Casino. In addition to Souza's failure to disclose this financing arrangement to the appropriate state authorities, the Casino engaged in "off-the-books" transactions (including a pattern and practice of "financial dealings involving hundreds of thousands of dollars without adequate documentation") and lacked adequate funds to cover the value of chips used by patrons.

In December 2015, the Bureau filed an accusation and statement of issues (accusation) seeking to revoke Souza's and the Casino's gambling licenses and "impose the maximum fine allowed by law." The accusation contained three "causes" for discipline — Souza was "unqualified for continued licensure," he failed to "reveal

2

material information to the Bureau," and he failed to "have sufficient monies on hand to cover players' funds on deposit."

In February 2017, to resolve the accusation, the Bureau and Souza agreed to a "stipulated settlement, decision, and order" to be submitted to the Commission for approval. Souza admitted the factual and legal allegations in the accusation, agreed to a lifetime gambling license ban, and agreed to pay $2.1 million in penalties and $400,000 for the reasonable costs of the Bureau's investigation and prosecution.[1]

Souza also expressly acknowledged and waived various rights:

"7.     Each Respondent has carefully reviewed, and has discussed with counsel, the legal and factual allegation in the Accusation and Statement of Issues. Each Respondent has also carefully reviewed, and has discussed with counsel, this Stipulated Settlement. Each Respondent fully understands the terms and conditions contained within this Stipulated Settlement and the effects thereof.

"8.     Each Respondent is fully aware of his, her, or its legal rights in this matter, including: the right to a hearing on all the allegations in the Accusation and Statement of Issues; the right to be represented by counsel of his, her, or its choice at his, her, or its own expense; the right to confront and cross-examine the witnesses against him, her, or it; the right to present evidence and testify on his, her, or its own behalf; the right to the issuance of subpoenas to compel the attendance of witnesses and the production of documents; the right to apply for reconsideration and court review of an adverse decision; and all other rights afforded by the California Administrative Procedure Act (Gov. Code, § 11370 et seq.), the Act, and all other applicable laws.

---

[1] Before the stipulated settlement, Souza signed a deferred prosecution agreement with the federal government in 2016 to resolve an indictment that charged him with failing to maintain a reasonably designed anti-money laundering program. Among other things, Souza agreed to (1) forfeit $200,000, (2) not engage in any managerial duties at the Casino, and (3) not violate any federal or state laws.

"9.   Each Respondent voluntarily, knowingly, and intelligently waives and gives up each and every right set forth in paragraph 8 above, withdraws his, her, or its request for a hearing on the Accusation and Statement of Issues, and agrees to be bound by this Stipulated Settlement."

More than eight months after the Commission adopted the stipulated settlement as its final decision and order in the matter, a judge ruled in a different case that the relevant statutory scheme in the Business and Professions Code limits fines and monetary penalties the Commission may impose to $20,000 per violation of gambling rules.  (See Bus. & Prof. Code, § 19930, subd. (c) ["In addition to any action that the commission may take against a license . . . the commission may also require the payment of fines or penalties," but "no fine imposed shall exceed twenty thousand dollars ($20,000) for each separate violation of any provision of this chapter or any regulation adopted thereunder"].)  Later, another judge of the same court in yet another separate case ruled similarly.

Invoking those superior court rulings, Souza petitioned the Commission in September 2019 to reduce the penalty and refund more than $675,000 he had already paid under the stipulated settlement.  The Commission informed Souza it lacked jurisdiction to consider his request, because he waived his right to reconsideration in the stipulated settlement.  Souza filed a petition for writ of mandate in the trial court challenging that determination.  The Commission demurred, arguing Souza's waiver in the stipulated settlement barred the action, and he lacked a valid basis to avoid enforcement of the waiver.  After the trial court sustained the Commission's demurrer with leave to amend, Souza filed an amended petition.

In April 2021, the trial court sustained the Commission's demurrer to the amended petition without leave to amend, ruling the stipulated settlement barred Souza's action because Souza waived his right to petition the Commission for a penalty reduction and to seek judicial review of the Commission's decision.  The trial court rejected Souza's

4

arguments for avoiding enforcement of the waiver. First, the trial court explained that even if the stipulated settlement's penalty was more than the Commission could lawfully impose under Business and Professions Code section 19930, subdivision (c), the stipulated settlement was consistent with public policy because Government Code[2] section 11415.60, subdivision (c) contemplates settlements that "include sanctions the agency would otherwise lack power to impose." Second, the court found Souza's Eighth Amendment challenge to the $2.1 million penalty unpersuasive because he *agreed* to the penalty, and the federal Constitution forbids only *imposition* of excessive fines. Next, the court held that Souza's economic duress argument was not persuasive, because he could have proceeded to a hearing and argued for limited penalties, and being unable to afford an attorney is not a valid basis to establish economic duress. Finally, the court found Souza's contention he and the Commission made a mutual mistake of law was not persuasive, in part, because a judicial decision reached after formation of a contract does not create a cognizable mistake of law that might undermine the contract; and in any event the law at the time was "unsettled."

After Souza timely appealed, a panel of this court ruled in a separate case that although section 19930, subdivision (c) of the Business and Professions Code "does not itself expressly mention a limit on monetary penalties," the statute should be considered within the broader statutory and regulatory framework of the Gambling Control Act (Bus. & Prof. Code, § 19800 et seq.), which *does* impose penalty limits. (*Swallow v. California Gambling Control Commission* (2022) 77 Cal.App.5th 1037, 1048, 1040-1041.)[3]

---

[2] Undesignated statutory references are to the Government Code.

[3] The panel explained in *Swallow* that the relevant statutory and regulatory framework "identifies a range of fine and penalty limits in the neighborhood of between $50 and $20,000, with a higher penalty up to $100,000 authorized in specified circumstances in subsequent proceedings." (*Swallow v. California Gambling Control Commission*, *supra*, 77 Cal.App.5th at p. 1048.)

DISCUSSION

I

*Ruling on the Demurrer*

Souza mostly reiterates on appeal arguments he made below in opposing the Commission's demurrer and seeking to avoid enforcement of his waiver of rights. He contends the petition sufficiently alleges that (1) the penalties and costs provisions of the stipulated settlement are contrary to California law and public policy, and therefore "void"; (2) the penalties and costs provisions of the stipulated settlement violate the "excessive fines" clause of the Eighth Amendment; (3) he agreed to the stipulated settlement "based on economic duress"; and (4) the stipulated settlement was based on a mutual mistake of law. His arguments are either forfeited on appeal or unconvincing.

A.      *Standard of Review*

A demurrer tests the sufficiency of the complaint by raising questions of law. (*Jones v. Whisenand* (2017) 8 Cal.App.5th 543, 550.) The plaintiff bears the burden on appeal to show the demurrer was sustained erroneously. (*Savage v. Trammell Crow Co.* (1990) 223 Cal.App.3d 1562, 1576.) We may affirm the judgment on any ground apparent from the record, regardless of the grounds upon which the trial court sustained the demurrer. (*Jones*, at p. 550.)

B.      *Section 11415.60, Subdivision (c)*

Section 11415.60, subdivision (c) provides, in relevant part that "[t]he terms of a settlement" involving an agency "may not be contrary to statute or regulation, except that the settlement may include sanctions the agency would otherwise lack power to impose." Invoking the statute's prohibition on settlement terms that are "contrary to statute or regulation" — as well as sections of the Civil Code (concerning unlawful contracts or unlawful contractual provisions) — Souza contends the stipulated settlement is a void contract because the penalties and costs in it are unlawful under *Swallow* and contrary to the way the Commission has historically treated penalties. To the contrary and as the

6

trial court reasoned, because section 11415.60, subdivision (c) expressly contemplates sanctions in settlements that an "agency would otherwise lack power to impose," the penalties and costs provisions in the stipulated settlement are consistent with California law, not contrary to it.

Souza argues this analysis is flawed because section 11415.20 says a "statute or regulation applicable to a particular agency . . . prevails over a conflicting or inconsistent provision of this chapter," and the $20,000 limit on fines in section 19930, subdivision (c) of the Business and Professions Code is applicable to the Commission, and therefore prevails over section 11415.60, subdivision (c). This argument is forfeited on appeal, because Souza did not raise it in the trial court. (*Sander v. Superior Court* (2018) 26 Cal.App.5th 651, 670 [" 'It is axiomatic that arguments not raised in the trial court are forfeited on appeal' "].)[4] Likewise, Souza's arguments that provisions in the Penal Code and title 18 United States Code section 1951 prevail over section 11415.60, subdivision (c) also are forfeited on appeal.

C.    *Eighth Amendment*

"Excessive bail shall not be required, nor *excessive fines imposed*, nor cruel and unusual punishments inflicted." (U.S. Const., 8th Amend., italics added.) Souza contends language in the stipulated settlement waiving his rights under "all other applicable laws" did not expressly include "constitutional arguments," and the penalties and costs provisions in the stipulated settlement violate the Eighth Amendment's excessive fines clause.

---

[4] The parties had the opportunity to brief forfeiture, a rule always implicated when an argument is raised for the first time on appeal. (See *People v. Alice* (2007) 41 Cal.4th 668, 679 ["The parties need only have been given an opportunity to brief the issue decided by the court, and the fact that a party does not address an issue, mode of analysis, or authority that is raised or fairly included within the issues raised does not implicate the protections of section 68081."].)

Assuming for the sake of argument that (1) Souza's waiver of constitutional rights in this matter had to be knowing and intelligent,[5] and (2) the "all other applicable laws provision" in the stipulated settlement did not amount to a knowing and intelligent waiver of Eighth Amendment rights, the trial court found this argument unpersuasive because the Commission did not "impose" penalties and costs within the meaning of the Eighth Amendment; rather Souza *agreed* to them to resolve the accusation. (Cf. *Rich Vision Centers, Inc. v. Board of Medical Examiners* (1983) 144 Cal.App.3d 110, 117 (*Rich Vision*) ["payments were not 'imposed' by the Board" because if the parties had "not wished to pay these amounts by way of settlement, they retained the option of declining to participate in the stipulation and to proceed to hearing on the licensing dispute"]; *Timbs v. Indiana* (2019) ___ U.S. ___ [139 S.Ct. 682, 687] [the excessive fines clause " 'limits the government's power to *extract* payments' " as punishment (italics added)]; Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 444 ["extract:" "1b: to pull or take out forcibly"].)

*Swallow* and *Rich Vision* are illustrative. Swallow owned a casino with two others. The Bureau filed an accusation seeking to revoke or suspend the gambling licenses of Swallow, the casino, and the co-owners. The accusation also sought to impose fines. (*Swallow*, *supra*, 77 Cal.App.5th at p. 1042.) The co-owners and the casino entered into a stipulated settlement admitting violations of the Gambling Control Act and agreeing to pay a $1.5 million fine and $275,000 in costs. They were allowed to retain their gambling licenses. (*Swallow,* at p. 1043.) Swallow's case did not settle.

---

[5] (See *City of Glendale v. George* (1989) 208 Cal.App.3d 1394, 1398, fn. 1 [explaining language in an opinion of the United States Supreme Court "suggests that in some civil cases the waiver of constitutional rights may have to meet criminal law waiver standards"]; cf. *Bayo v. Napolitano* (7th Cir. 2010) 593 F.3d 495, 503 ["The Supreme Court . . . has established constitutional standards for waivers of constitutional rights in civil cases"].)

Instead, it went to an administrative law judge, who ordered revocation of Swallow's license and payment of a $430,000 fine. Declining to adopt the decision of the administrative law judge, the Commission imposed on Swallow a $13,672,000 monetary penalty and $127,880 in costs. (*Id.* at pp. 1043-1044.) Swallow challenged the monetary penalty and costs in the courts, leading to the *Swallow* opinion.

In *Rich Vision*, corporations doing business as dispensing opticians had multiple pending contested matters with the Board of Medical Examiners (the Board). Counsel for the corporations and the Board negotiated a settlement, which included a total payment of about $40,000 for the Board's attorney fees and future inspection costs. No licenses were revoked. "During the settlement negotiations, no allegation was raised by [the corporations] that the money payment portion of the settlement was illegal." (*Rich Vision*, *supra*, 144 Cal.App.3d at pp. 112-113.) About two years after the settlement, the corporations sought relief in the courts, seeking the recovery of the money they paid in connection with negotiated settlement, and alleging that "in accepting the settlement, the Board did not have the authority to condition . . . licenses on such payments and that the payments were coerced." (*Id.* at p. 113.) The corporations argued the terms of the settlement were illegal because the relevant statute contemplated the functions of the Board, including " 'issuing citations and holding hearings for the revocation of licenses, and the imposing of penalties following such hearings,' " and the attorney fees and the future investigation costs they had paid were " 'penalties' which were imposed without the required notice and hearing." (*Id.* at p. 116.)

The appellate court rejected the corporations' argument, explaining: "We do not believe [the statute] was violated here. The fee provisions were part of a negotiated settlement agreement which the trial court specifically found was not coerced, and did not constitute 'penalties' imposed by the Board. Had [the corporations] not wished to pay these amounts by way of settlement, they retained the option of declining to participate in the stipulation and to proceed to hearing on the licensing dispute. The payments were not

'imposed' by the Board; they were voluntarily assented to by [the corporations]." (*Rich Vision*, *supra*, 144 Cal.App.3d at p. 117.)

Here, Souza — like the corporations in *Rich Vision* and Swallow's co-owners, and unlike Swallow — resolved his matter before it went to an adjudicatory hearing by *agreeing* to a fixed sum of monetary penalties and costs in the stipulated settlement. And then the Commission *adopted outright* the stipulated settlement as its final decision and order. The penalties and costs Souza agreed to were not "imposed" on him within the meaning of the Eighth Amendment.

Souza offers three unpersuasive reasons why the trial court's analysis was purportedly flawed. First, he argues he was "forced to enter into the Settlement as a result of economic duress." But as we explain below, the "economic duress" claim lacks merit. Next, he analogizes this claim to a challenge to an "illegal" or "unauthorized" sentence in the criminal context, which challenge is never barred. But as explained above, since Souza agreed to the penalties and costs, the Eighth Amendment was not implicated. Accordingly, the stipulated settlement was not "illegal" or "unauthorized" under that constitutional provision. Last, Souza argues the question of whether a fine contravenes the Eighth Amendment is " 'generally a question of fact,' " and the trial court should have accepted allegations in the petition as true. But there is no material question of fact *here*, because the Eighth Amendment claim fails as a matter of law.

D.     *Economic Duress*

"The doctrine of 'economic duress' can apply when one party has done a wrongful act which is sufficiently coercive to cause a reasonably prudent person, faced with no reasonable alternative, to agree to an unfavorable contract." (*CrossTalk Productions, Inc. v. Jacobson* (1998) 65 Cal.App.4th 631, 644.)

Souza cites *Lanigan v. City of Los Angeles* (2011) 199 Cal.App.4th 1020, 1034 (*Lanigan*) for the proposition "[t]he doctrine of economic duress can form a basis for rescission of a settlement agreement." He maintains the petition contained a sufficiently

10

pleaded claim of economic duress: "Souza felt he would face economic ruin if he did not agree to the Settlement."

Assuming for the sake of argument that all other elements of this doctrine are met (including a wrongful act by the Commission — "insisting that Souza accept excessive and inflated" penalties, in Souza's words — and that the stipulated settlement was "unfavorable" to Souza), this claim fails because *Lanigan* also stands for the proposition a party "cannot establish he had no reasonable alternative to signing" a settlement agreement with a waiver provision if that which the party sought to avoid thereby was "not a certainty." (*Lanigan, supra*, 199 Cal.App.4th at p. 1034; *ibid* [a party "cannot show duress" where the party "could have exercised his right to appear before" an adjudicatory panel, and "termination was not a certainty," despite the party's contention he signed the settlement agreement with a waiver "under fear of losing his career and livelihood"].)

Here, it is apparent from the record that "economic ruin" was a not certainty, even accepting for present purposes that Souza faced the *possibility* of "economic ruin" due to the possibility of "unlimited monetary penalties." As in *Lanigan*, Souza could have exercised his right to a hearing to contest the allegations against him.

E.    *Mutual Mistake of Law*

A mutual mistake of law is " '[a] misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law . . . .' (Civ. Code, § 1578, subd. 1.) A party to a contract may rescind it if consent to the contract was given by mistake." (*People v. Superior Court (Sanchez)* (2014) 223 Cal.App.4th 567, 573; see *Harris v. Rudin* (2002) 95 Cal.App.4th 1332, 1339.)

Souza argues the petition sufficiently alleges the parties to the stipulated settlement made a mutual mistake that became apparent after *Swallow* was published:

that Business and Professions Code section 19930, subdivision (c), allowed the Commission "unfettered discretion to impose unlimited penalties against Souza."

Even if we assume that when they entered into the stipulated settlement the parties were ignorant of section 11415.60, subdivision (c), and understood the law to be contrary to *Swallow*'s later holding, this argument is unpersuasive in light of *Cooley v. County of Calaveras* (1898) 121 Cal. 482, wherein our Supreme Court held: " 'The understanding of the law prevailing *at the time of the settlement of a contract*, although erroneous, will govern, and the subsequent settlement of a question of law by judicial decision does not create such a mistake of law as courts will rectify." (*Id.* at pp. 486-487, italics added; see *Campbell v. Rainey* (1932) 127 Cal.App. 747, 749-750 [applying *Cooley* in ruling plaintiff was not entitled to recover payments made to defendant under the parties' mutual mistake that a statute contemplating such payments — later found unconstitutional — was valid at the time of the payments]; cf. *Harris v. Rudin, supra*, 95 Cal.App.4th at pp. 1335-1336, 1338-1339 [reversing a judgment because triable issue existed regarding whether, at the time of the parties' agreement, they were ignorant of recent statutory changes to the relevant law].)[6]

Souza argues *Cooley* does not prevent rescission of a contract that was contrary to law and invalid when the contract was made, and regulations in effect at the time of the stipulated settlement (regarding imposition of fines or monetary penalties by the Commission) demonstrate the stipulated settlement was invalid. This argument lacks merit, because — as explained above — section 11415.60, subdivision (c) expressly permits settlement terms the Commission "would *otherwise* lack power to impose." (§

---

[6] Further, the contract between Souza and the Bureau here was adopted by the Commission as its final decision and order, implicating case law standing for the proposition a "postjudgment, nonretroactive reinterpretation of the law is not a basis for disturbing a final judgment" under the doctrine of mutual mistake of law. (*In re Marriage of Mansell* (1989) 217 Cal.App.3d 219, 223, 234.)

12

11415.60, subd. (c), italics added.) The stipulated settlement was not contrary to law when the parties agreed to it because, unlike the parties in *Swallow*, Souza did not exercise his full rights under the Administrative Procedures Act only to have fines in excess of $20,000 per violation imposed against him by the Commission. The law allowed for, and Souza availed himself of, the opportunity to forego the right to challenge the allegations within the accusation and enter into a settlement agreement with provisions that the Commission otherwise lacked the power to impose.

Souza argues further that the trial court "ignored" his allegations concerning the way the Commission "had always treated penalties and fines." But Souza does not explain why this warrants reversal of the trial court's ruling. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [court may disregard conclusory arguments unsupported by cogent argument and reasoning].)

Souza appears to take issue with the trial court's characterization of the state of the relevant law at the time of the stipulated settlement as "unsettled." But again, Souza does not explain why this warrants reversal of the trial court's ruling. (See *United Grand Corp. v. Malibu Hillbillies, LLC, supra*, 36 Cal.App.5th at p. 153.)

Based on the foregoing, the trial court's analysis that there was no Eighth Amendment violation was correct.

## II

### *Denial of Leave to Amend*

#### A. *Standard of Review*

If the trial court sustains a demurrer without leave to amend, the plaintiff must demonstrate "a reasonable possibility" the defect in a pleading can be cured with an amendment. "If we find that an amendment could cure the defect, we must find the court abused its discretion and reverse. If not, the court has not abused its discretion." (*Scholes v. Lambirth Trucking Co.* (2017) 10 Cal.App.5th 590, 595.)

13

B.    *Economic Duress*

Souza argues the trial court abused its discretion in refusing to permit him to amend the petition's "economic duress" claim further to "more clearly allege that he could not afford to pay an attorney to contest the Accusation." This argument is unpersuasive because the proposed amendment would not cure the defect with the claim that we identified above: Souza cannot show economic duress because "economic ruin" was at most a possibility, not a certainty. (*Lanigan, supra*, 199 Cal.App.4th at p. 1034.)

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to the Commission. (Cal. Rules of Court, rule 8.278(a).)


_____/s/_____
BOULWARE EURIE, J.



We concur:



_____/s/_____
MAURO, Acting P. J.



_____/s/_____
DUARTE, J.

14