**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVE KLEIN; SUSEN FAY; M.
LORRAINE KLEIN; MICHAEL LEWIS;
SAUL LISAUSKAS; KRISTIN
SCHUITEMAN; JEFFERSON SMITH;
MARY THOMPSON; ELIZABETH
WELLER; and ROBERT WELLER,
          *Plaintiffs-Appellants,*

          v.

CITY OF SAN CLEMENTE,
          *Defendant-Appellee.*

No. 08-55015

D.C. No.
CV-07-03747-AHM

OPINION

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
August 4, 2008—Pasadena, California

Filed October 2, 2009

Before: Stephen Reinhardt, Roger J. Miner,* and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

*The Honorable Roger J. Miner, Senior United States Circuit Judge for the Second Circuit, sitting by designation.

14227

## COUNSEL

Michael J. Kumeta (argued), La Mesa, California ; William G. Gillespie, Poway, California; for plaintiffs-appellants Steve Klein, et al.

Edwin J. Richards (argued), Julie R. Beaton, M. Courtney Koger, Kutak Rock LLP, Irvine, California; for defendant-appellee City of San Clemente.

## OPINION

BERZON, Circuit Judge:

The City of San Clemente flatly prohibits the leafleting of unoccupied vehicles parked on city streets. We conclude that

petitioners are likely to succeed in demonstrating that the City's justification for its prohibition is insufficient and that they have otherwise met the requirements for obtaining a preliminary injunction enjoining enforcement of the prohibition. We therefore reverse the district court's order denying petitioners' motion for a preliminary injunction and remand for further proceedings consistent with this opinion.

## FACTUAL & PROCEDURAL BACKGROUND

On June 2, 2007, Steve Klein and several cohorts (collectively "Klein") were distributing leaflets expressing their views on immigration policy. Klein initially handed leaflets to passing pedestrians but later started placing leaflets under the windshield wipers of unoccupied vehicles parked along city streets. While doing so, he was approached by several local sheriff's deputies. The deputies ordered him to stop, explaining that "throwing" or "depositing" any commercial or noncommercial advertisement "in or upon" any vehicle violated a City of San Clemente anti-litter ordinance. Section 8.40.130 of the City's municipal code provides:

> "No person shall throw or deposit any commercial or noncommercial advertisement in or upon any vehicle. Provided, however, that it shall not be unlawful in any public place for a person to hand out or distribute, without charge to the receiver thereof, a noncommercial advertisement to any occupant of a vehicle who is willing to accept it."

Klein asked the deputies what they would do if he continued to leaflet parked vehicles and was told that he would be cited for violating the ordinance. He immediately stopped distributing leaflets.

Klein then filed suit in federal court, arguing that the City's vehicle leafleting ordinance, both on its face and as applied, violated his free speech rights under the First Amendment of

the federal Constitution and the Liberty of Speech Clause of the California Constitution. The district court denied Klein's motion for a preliminary injunction. Klein timely appealed.

## ANALYSIS

**[1]** To warrant injunctive relief, a plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374 (2008); *see also Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' " *Winter*, 129 S. Ct. at 376 (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987)).

In this case, the district court judge denied Klein's motion for a preliminary injunction solely because he concluded that the City's ordinance was narrowly tailored to serve the City's significant interest in litter prevention and "promoting esthetic values." "We will reverse a denial of a preliminary injunction where the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Sammartano v. First Judicial District Court*, 303 F.3d 959, 964 (9th Cir. 2002); *see also Community House, Inc. v. City of Boise*, 490 F.3d 1041, 1047 (9th Cir. 2007). Further, "[w]hen the district court is alleged to have relied on an erroneous legal premise, we review the underlying issues of law *de novo*." *Id.*; *see also Sammartano*, 303 F.3d at 964-65.

Applying those review standards, we hold that the district court's conclusion regarding Klein's likelihood of success on the merits was incorrect. On the current record, none of the interests asserted by the City were proven sufficiently weighty

to justify the restrictions placed on Klein's right to express his political views. Moreover, Klein has established the other prerequisites for a preliminary injunction under the *Winter* standard. We therefore reverse the district court's denial of Klein's motion for a preliminary injunction and remand for further proceedings consistent with this opinion.

## I.

Klein filed suit under both the California and federal Constitutions.[1] We must first "determine if the California Constitution provides independent support for [his] claim. If so, we will be able to avoid the determination of any federal constitutional issues and thus abide by the doctrine that federal courts should not decide federal constitutional issues when alternative grounds yielding the same relief are available." *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 856 (9th Cir. 2004) (quotation and citation omitted).

[2] In this case, however, the relevant standards under the federal and state constitutions are the same. The parties agree, although they arrive at this conclusion by different routes, that the City's ordinance should be treated as a traditional "time, place, and manner" restriction on Klein's speech.[2] California's "formulation of the time, place, and manner test was fashioned from a long line of United States Supreme Court

---

[1]The California Liberty of Speech Clause provides, "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press." CAL. CONST. art. I, § 2(a). This clause has been interpreted to "provide[ ] protections for speakers in some respects broader than provided by the First Amendment." *Kuba*, 387 F.3d at 856; *see also L.A. Alliance for Survival v. City of Los Angeles*, 993 P.2d 334, 341 (Cal. 2000).

[2]We agree that time, place, and manner analysis is appropriate here, either under a public forum analysis, *see Kuba*, 387 F.3d at 856-57, or because placing leaflets with a political message on cars is expressive conduct. *See United States v. O'Brien*, 391 U.S. 367 (1968).

cases, and . . . analysis of speech regulation under [the California Liberty of Speech Clause] employs time, place and manner restrictions measured by federal constitutional standards." *Id.* at 340 n.7 (quotations and citations omitted); *see also Kuba*, 387 F.3d at 856. "Under either foundational document . . . permissible restrictions on expression in public fora must be content-neutral, be narrowly tailored to serve an important government interest, and leave open ample alternative channels for the communication of the message." *Kuba*, 387 F.3d at 856-58 (quotation omitted).[3] While Klein has the general burden of establishing the elements necessary to obtain injunctive relief, the city has the burden of justifying the restriction on speech. *See Kaufman v. ACS Systems, Inc.*, 2 Cal. Rptr 3d. 296, 313 (2003) ("The party seeking to uphold a restriction on commercial speech carries the burden of justifying it," (quotations omitted)); *S.O.C. v. County of Clark*, 152 F.3d 1136, 1146 (9th Cir. 1998) (holding that plaintiffs were likely to succeed on the merits because county did not meet its burden of demonstrating that its content-based ordinance was the least restrictive means to further a compelling interest).

## II.

[3] The parties agree that the ordinance is content-neutral, so the first prong of the traditional "time, place, and manner" inquiry is not at issue in this case. Thus, to justify restricting Klein's constitutionally-protected speech, the City must demonstrate that the restrictions imposed by its anti-litter ordinance are "narrowly tailored to serve a significant government interest, and that they leave open ample alternative avenues

---

[3]The term "important government interest" refers to the same standard as the "substantial" or "significant" government interest invoked in federal First Amendment cases. *See Kuba*, 387 F.3d at 856 (noting that restriction must be "narrowly tailored to serve an important government interest," quoting *Galvin v. Hay*, 374 F.3d 739, 746 (9th Cir. 2004)) and 858 (referring to government interest as "significant") and at n.9 (citing federal cases characterizing government interest as "substantial").

for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citations omitted).

**[4]** To satisfy the "narrowly tailored" aspect of this test, the restriction "need not be the least restrictive or least intrusive means of [serving the government's interest]," but it also may not "burden substantially more speech than is necessary to further" that interest. *Id.* at 798-99. The existence of "numerous and obvious less-burdensome alternatives" is relevant to assessing whether the restriction on speech reasonably fits the interest asserted. *See City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 n.13 (1993).

The City contends that the anti-litter ordinance is narrowly tailored to advance two significant interests, which we address in turn below: preventing littering and the unauthorized use of private property. The district court concluded that the ordinance was narrowly tailored to advance the anti-littering interest, and thus denied Klein's motion for a preliminary injunction. We disagree with the district court's assessment in this regard and conclude that the second interest proffered by the city, preventing unauthorized use of private property, fares no better. We therefore reverse.

## A. LITTER

The City first asserts an interest in "prohibiting litter and visual blight thereby preserving the aesthetics of the community."[4] Citing a line of cases addressing municipal regulation of

---

[4]In referring to "litter and visual blight," the City does not suggest that the leaflets constitute litter or visual blight when they are placed on the windshields of unoccupied vehicles, but rather that they may result in visual blight if strewn on the ground. For example, the City's brief asserts that "leaflets blown off vehicles, or thrown off vehicles by angry drivers, certainly fit into" the definition of litter under city ordinances, and cites "the public blight *that would be caused by* the litter." (emphasis added). Similarly, the City objects to the proposition that it could punish those

billboards and outdoor advertising, the City argues that "it is well-recognized that the curbing of litter and visual blight [to preserve] the aesthetics of the community are substantial governmental goals." *See, e.g.*, *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981). The ordinance is narrowly tailored to serve this interest, the City contends, because it "only prohibits the placing of materials on unoccupied vehicles where it results in litter" and thus "target[s] the precise problem that it wished to correct."

[5] We cannot accept the government's syllogism. The city would have to show some nexus between leaflets placed on vehicles and a resulting substantial increase in litter on the streets before we could find that the City's asserted interest in preventing littering on the street justifies a prohibition on placing leaflets on windshields. As both this court and the Supreme Court have repeatedly emphasized, "merely invoking interests . . . is insufficient. The government must also show that the proposed communicative activity endangers those interests." *Kuba*, 387 F.3d at 859 (citation omitted); *see also Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 73, 75

---

who actually throw leaflets on the ground only on the basis that leaflets may be dislodged from car windshields by wind and rain, but does not contend that "visual blight" is created by the leaflets when attached to cars. As the City's asserted interest is simply preventing litter in the usual sense of the term and not the appearance of the leaflets while secured to the cars, *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984), upholding an ordinance forbidding the permanent attachment of leaflets to utility poles, is not applicable.

The City's chosen articulation of its interest is understandable, as any analogy to the governmental interest recognized in *Taxpayers for Vincent* — eliminating the "visual blight" of numerous signs attached to utility poles — would be weak. Here, the cars themselves are not permanently present on the streets, nor are the leaflets permanently affixed to the cars. Also, the leaflets are likely designed to be read only by the owner of the car, not by passersby, and so will not attract attention based on what is written on them. Any visual impact is therefore both marginal and transitory, rendering any governmental interest in eliminating it minimal.

(1981) (rejecting city's asserted zoning interests because it "presented no evidence"); *Bay Area Peace Navy v. U.S.*, 914 F.2d 1224, 1228 (9th Cir. 1990) ("[The government] is not free to foreclose expressive activity in public areas on mere speculation about danger"); *S.O.C., Inc.*, 152 F.3d at 1146 ("[N]o evidence exists in the present record . . . to support an assumption that commercial handbillers are the inherent cause of Clark County's pedestrian flow problems."); *Sammartano*, 303 F.3d at 967 ("There must be evidence in the record to support a determination that the restriction [on speech] is reasonable."); *Berger v. City of Seattle*, 569 F.3d 1029, 1049 (9th Cir. 2009) ("A governmental body seeking to sustain a restriction must demonstrate that the harms it recites are real.") (citation omitted).

**[6]** Applying this evidentiary requirement and assuming that litter prevention can constitute a sufficiently significant government interest to justify an interference with free speech,[5] the record in this case is plainly inadequate to support the government's asserted interest in restricting Klein's speech.

---

[5]There is language in Supreme Court decisions suggesting that preventing littering is simply not a sufficiently significant interest to preclude leafletting. *See Schneider v. New Jersey*, 308 U.S. 147, 165-66 (1939) ("[T]he public convenience in respect of cleanliness of the streets does not justify an exertion of the police power which invades the free communication of information and opinion secured by the Constitution."); *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943) ("[The right to distribute literature] may not be withdrawn even if it creates the minor nuisance for a community of cleaning litter from its streets."). These cases were decided before the full-blown articulation of the time, place and manner standard. It may be that, under the standard as currently articulated, the observations about littering in *Schneider* and *Martin* are best understood as applications of the "narrow tailoring" prong. *See Van Nuys Publishing Company, Inc. v. City of Thousand Oaks*, 97 Cal. Rptr. 777, 779 (1971) (referring to litter reduction as "a legitimate and, indeed an increasingly urgent, government objective," but, relying on *Martin* and *Schneider,* striking down an ordinance restricting door-to-door leafletting). In any event, we need not decide here whether preventing littering can ever be a significant government interest justifying a speech regulation in a public forum, as we conclude that the record is insufficient to establish such an interest here.

We note that preventing a *marginal* quantity of litter is not a sufficiently significant interest to restrict leafletting. Discarded paper, coffee cups and food wrappers can also add to litter, but we remain free to carry beverages and candy bars on public streets, indicating that municipalities do not usually endeavor to eliminate all possibilities of litter. So the City must show not only that vehicle leafletting can create litter, but that it creates an abundance of litter significantly beyond the amount the City already manages to clean up.

The only evidence on this point was submitted by Klein, who stated that "if [he] securely place[s] leaflets under windshield wipers of vehicles, usually no litter will occur as a result of the leafletting activity. In those instances where some litter does occur, it usually consists of no more than one or two leaflets out of hundreds of leaflets placed on unoccupied vehicles." Preventing "one or two leaflets" from being placed on city streets does not constitute a significant government interest. *See Schneider*, 308 U.S. at 155, 157 (indicating that the governmental interest was insufficient where "many" of the hand-bills, at least 30 in one city, "lay in the gutter and in the street").

The City argues that "the Court need look no further than the Ordinance itself to find evidence of the City's interests and goals," as "the City's interest in curbing litter is evidenced by the explicit title of the ordinance[,] . . . the 'San Clemente Anti-Litter Ordinance.'" Noticeably absent from the City's argument, however, is any claim that the type of leafleting engaged in by Klein significantly increases the amount of litter in San Clemente. The title of an ordinance is not evidence of an actual problem.

[7] Aside from the ordinance's title, all the City offers concerning its interest in limiting litter on the streets by forbidding affixing leaflets on car windshields is the equivocal promise that, "[s]hould this case go forward, . . . discovery and witnesses . . . would likely support the City's assertions."

That may be, and the City will have a chance later to conduct discovery and put on witnesses. But the preliminary injunction record as it now stands contains nothing whatever to support the assertion that placing leaflets on car windshields results in a significant increase in the amount of litter on the streets.

Our conclusion that an asserted interest in preventing street litter cannot justify a prohibition on placing leaflets on car windshields accords with holdings by two of the three circuits that have addressed this very issue. *Jobe v. City of Catlettsburg*, 409 F.3d 261, 269 (6th Cir. 2005) held "the common-sense explanation for these types of laws" sufficient without any proof that the problem has occurred in the past. But the Seventh Circuit disagreed, noting that "common sense . . . can all-too-easily be used to mask unsupported conjecture, which is, of course, *verboten* in the First Amendment context." *Horina v. Granite City*, 538 F.3d 624, 633 (7th Cir. 2008) (citations omitted). And the Eighth Circuit invalidated a vehicle-leafletting ban "notwithstanding defendants' evidence that government officials received complaints about handbills left on cars," because the city had failed to "establish[ ] a factual basis for concluding that a cause-and-effect relationship actually exists between the placement of handbills on parked cars and litter that impacts the health, safety, or aesthetic well-being of the defendant cities." *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1221-22 (8th Cir. 1998). *Accord City of Akron v. Molyneaux*, 760 N.E.2d 461,467 (Ohio App. 2001) ("The city has not established a factual basis for concluding that a relationship actually exists between the placement of handbills on vehicles on private or public property and the prevention of litter that impacts the health, morals, peace, and welfare of the community.")

**[8]** In sum, the City has not provided any evidence that placing leaflets on parked cars results in any litter, much less a more-than-minimal amount of additional litter. The district court thus clearly erred in concluding that the ordinance was

narrowly tailored to advance the City's significant interest in preventing litter.

## B.   UNAUTHORIZED USE OF PRIVATE PROPERTY

**[9]** The City also asserts an "interest in preserving an individual's right to decide how and when their private property will be used." This interest is also plainly insufficient to justify the City's ordinance.

**[10]** The assertion of an interest in protecting the rights of car owners runs counter to the general rule that the "right to distribute literature . . . necessarily protects the right to receive it." *Martin*, 319 U.S. at 143. When an ordinance "does not control anything but the distribution of literature," the government cannot "submit[ ] the distributer to criminal punishment for annoying the person on whom he calls, even though the recipient of the literature distributed is in fact glad to receive it." *Id.* at 143-44.

In this case, the City's ordinance forbids Klein to distribute literature to vehicle owners who may want to receive his speech even though they are not present at the time of distribution. The Court has rejected similar attempts to "shut off the flow of" protected speech, even when the speaker seeks access to the recipient's private home, *see Martin*, 319 U.S. at 142, and even when the speech in question is commercial speech afforded "less protection . . . [than] other constitutionally safeguarded forms of expression." *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 64-65 (1983).[6] The mere fact that an unwilling recipient must take the unsolicited leaflet from

---

[6]In *Bolger*, the Court held that "the First Amendment does not permit the government to prohibit speech as intrusive unless the captive audience cannot avoid objectionable speech." 463 U.S. at 72 (quotation omitted). The Court clarified that recipients of unsolicited leaflets or mailers are not a captive audience, as they "may effectively avoid further bombardment of their sensibilities simply by averting their eyes." *Id.* (quotation omitted).

her windshield and place it in the garbage cannot justify an across-the-board restriction. Just as the "short, though regular, journey from mail box to trash can . . . is an acceptable burden, at least so far as the Constitution is concerned," *id.* at 72 (quotation omitted), so the burden on recipients of disposing of unwanted leaflets cannot justify hampering speech.

The City may allow potential recipients to opt-out of receiving communications on their property, *see Rowan v. Post Office Dep't*, 397 U.S. 728, 737 (1970), as Klein recognizes by proposing that the City permit vehicle owners to post the equivalent of a "No Soliciting" sign on their dashboard to avoid unwanted leaflets. But the City's ordinance goes well beyond merely allowing unwilling recipients to opt out of car leafletting, rendering any asserted interest in preserving private property rights insufficient to support the breadth of the prohibition.

The Sixth Circuit's concluded otherwise, declaring that protecting unwilling recipients of car leaflets by allowing them to place a "No Handbills" sign on the dashboard, and requiring that it be honored, represents an "unorthodox burden." *Jobe*, 409 F.3d at 272. We disagree. The Supreme Court has repeatedly held "No Solicitations" signs adequate to inform door-to-door canvassers that residents do not want unknown visitors at their homes, and has on that basis precluded broad bans on door-to-door solicitation. *See, e.g., Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150, 168 (2002) (holding that the provision of the ordinance "which provides for the posting of 'No Solicitation' signs . . . provides ample protection for the unwilling listener."); *Vill. of Schaumberg v. Citizens for a Better Env't*, 444 U.S. 620, 639 (invalidating a restriction on door-to-door canvassing because "the provision permitting homeowners to bar solicitors from their property by posting signs . . . suggest[s] the availability of less intrusive . . . measures to protect privacy."). If anything, vehicles are entitled to less assiduous protection than residences, long afforded a higher degree of

privacy under our law. *See, e.g.*, *California v. Carney*, 471 U.S. 386, 392 (1985) (holding that the Fourth Amendment permits warrantless searches of cars because "[a]utomobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls."). And as the Seventh Circuit noted, the alternative to vehicle-leafletting is distributing leaflets only to those available to accept them, a mode of communication that is "extremely time consuming and burdensome, particularly when the individual intends to convey a message to people who park their automobiles in a certain area of the city or who live in a certain neighborhood." *Horina*, 538 F.3d at 636.

**[11]** In sum, just as the protection of private property is not a sufficiently substantial government interest to justify an across-the-board ban on door-to-door solicitation, so that interest cannot suffice to justify an across-the-board ban on placing leaflets on the windshields of empty vehicles parked on public streets.

## III.

**[12]** The California Supreme Court has yet to decide whether ordinances prohibiting the leafletting of unoccupied vehicles parked on public streets are incompatible with the state Constitution's Liberty of Speech Clause. Closely analogous California Supreme Court precedent addressing door-to-door distribution of leaflets, however, has affirmed a speaker's right to leave literature on the doorsteps and porches of residences. In *Van Nuys Publishing Company, Inc. v. City of Thousand Oaks*, 97 Cal. Rptr. 777 (1971), the California Supreme Court struck down an anti-littering ordinance that prohibited leaving leaflets in or on the yard, porch or doorstep of private residences without prior permission. The ordinance swept too broadly by criminalizing the behavior of "those who, in delivering pamphlets, take care to secure their messages so as to eliminate the hazards of litter." *Id.* at 779-80. The Court noted that "[i]n the context of private residences

. . . a requirement that a distributor obtain consent prior to the delivery of written material will, as a practical matter, frequently operate to curtail completely this means of communication." *Id*. at 781.

The *Van Nuys* Court did not, as the City suggests, rest its holding on the fact that the ordinance prohibited entry onto private property where residents might be present and willing to receive the literature. The effect of the ordinance, the Court noted, was to eliminate "the possibility of communication between a distributor and those willing recipients who are *not present* to give personal consent to the delivery of distributed literature." *Id*. at 814 (emphasis added, citations and quotation marks omitted). The ordinance thus "impairs a distributor's opportunity to win the attention of all uncommitted listeners." *Id*. (citations and quotation marks omitted).[7]

**[13]** More recently, a California appellate court upheld a vehicle-leafletting ban applicable to the parking lot of a private shopping center. *See Savage v. Trammell Crow Co.*, 273 Cal. Rptr. 302 (Cal. Ct. App. 1990). If *Savage* were directly analogous to this case, we would be bound to follow it as the pronouncement of a state appellate court, "[i]n the absence of a pronouncement by the highest court of a state . . . unless there is convincing evidence that the highest court of the state would decide differently." *Briceno v. Scribner*, 555 F.3d 1069, 1080 (9th Cir. 2009) (citation and quotation marks omitted). But *Savage* does not concern an analogous municipal ordinance applicable to public streets. Moreover, *Savage* has been at least somewhat undermined as to what it did hold by a later California Supreme Court opinion, *Fashion Valley Mall, LLC v. NLRB*, 69 Cal. Rptr. 3d. 288, 301 (2007). For

---

[7]The Georgia Supreme Court similarly concluded that an ordinance prohibiting the placement of literature in yards, driveways and porches impermissibly "bans a substantial amount of speech that residents may want to hear . . . ." *Statesboro Publ'g Co. v. City of Sylvania*, 516 S.E. 2d 296, 298 (Ga. 1999).

several reasons, we believe that the California Supreme Court would follow *Van Nuys*, rather than *Savage*, in deciding the validity of a municipal vehicle-leafletting ordinance, and so rely on *Van Nuys* and not *Savage*.

First, the ban in *Savage* was imposed by the owner of a private mall, making it factually and analytically distinguishable from the municipal ordinance here. The California court of appeal in *Savage* noted that the mall owner's right to impose reasonable time, place and manner restrictions stemmed from "important rights of substance," namely "freedom from disruption of normal business operations and freedom from interference with customer convenience." *Savage*, 273 Cal. Rptr. at 306 (quotation marks and citation omitted). No similar private business interests are at stake here.

Moreover, even to the degree the interests in *Savage* are not focused on conducting private business without interference, the ban was not upheld based solely on an interest in preventing littering, but took into account an additional interest not here present. The ban in *Savage* was applied in a parking lot, not a public street, and the opinion stressed that the parking lot's restricted traffic patterns led to valid concerns about "interference with ingress and egress from the center" because of the presence of the leafletters, which could "potentially increase the occurrence of traffic accidents." *Savage*, 273 Cal. Rptr. at 307, 305. It is well established that "interests in pedestrian and traffic safety, as well as in preventing traffic congestion, are significant." *Kuba*, 387 F.3d at 858. This parking lot/traffic focus makes *Savage* less persuasive authority than *Van Nuys*, which addressed interests parallel to those asserted by the City here and found that "[a] city cannot . . . preserve privacy (or attack litter) by prohibiting all distribution without prior consent." *Van Nuys*, 97 Cal. Rptr. at 783-84 (internal quotation marks omitted).

Finally, *Savage* has been undermined, if not overruled, by *Fashion Valley Mall*. *Savage* relied repeatedly on *H-CHH*

*Assoc. v. Citizens for Representative Gov't*, 238 Cal. Rptr 841 (Cal. Ct. App. 1987), which held that a shopping mall could prohibit the solicitation of contributions or donations because the mall's "function is to facilitate the ease of commerce and to promote the business of its merchant tenants," and any solicitation of political funds is in tension with that function. *H-CHH*, 238 Cal. Rptr at 859; *see Savage*, 273 Cal. Rptr. at 306-07 (citing *H-CHH* four times). The California Supreme Court recently disapproved *H-CHH* in *Fashion Valley Mall*, 69 Cal. Rptr. 3d. at 301 (holding that a union was entitled to conduct a peaceful boycott of one of the mall's tenants).**[8]** The court in *Savage* did not cite *H-CHH* for the precise point of law that the California Supreme Court specifically rejected in *Fashion Valley Mall*. But *Savage*'s focus on mall owners' prerogative to limit speech so as to further its interests as a property owner has been undermined by the Court's strong affirmation of free speech rights in the shopping mall context in *Fashion Valley Mall*.

**[14]** In sum, we conclude that *Van Nuys* strongly supports our conclusion that under California law a vehicle leafletting ban cannot be justified by an interest in protecting the private property rights of recipients of leaflets. We have a firm basis for believing that, in a case similar to this one, the California Supreme Court would follow *Van Nuys* and not *Savage*, a later intermediate appellate decision involving different circumstances and undermined by subsequent California Supreme Court authority.

## IV.

**[15]** Klein has thus demonstrated a likelihood of success on

---

**[8]**Fashion Valley Mall relied on *H-CHH* in arguing that, because malls could prohibit financial solicitation as fundamentally incompatible with the mall's function, they could prohibit boycotts against stores in the mall for the same reason. The Court rejected this line of analysis. *Fashion Valley Mall*, 69 Cal. Rptr. 3d at 301-02.

the merits of his claim that the City's anti-litter ordinance violates his right to free speech under the California Constitution, as the City has not shown that the ordinance is narrowly tailored to advance either of its asserted interests. To warrant injunctive relief, however, Klein must also demonstrate that he is likely to suffer irreparable injury in the absence of a preliminary injunction, and that the balance of equities and the public interest tip in his favor. *See Winter*, 129 S. Ct. at 374. If we were in doubt whether Klein satisfied the remaining requirements for injunctive relief, we would remand to allow the district court to assess the likelihood of irreparable injury and to balance the equities. Given the free speech protections at issue in this case, however, it is clear that these requirements are satisfied.

**[16]** Both this court and the Supreme Court have repeatedly held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Sammartano*, 303 F.3d at 973-74; *S.O.C., Inc.*, 152 F.3d at 1148; *Jacobsen v. U.S. Postal Service*, 812 F.2d 1151, 1154 (9th Cir. 1987). The harm is particularly irreparable where, as here, a plaintiff seeks to engage in political speech, as "timing is of the essence in politics" and "[a] delay of even a day or two may be intolerable . . . ." *Long Beach Area Peace Network v. City of Long Beach*, 522 F.3d 1010, 1020 (9th Cir. 2008) (quoting *NAACP. v. City of Richmond*, 743 F.2d 1346, 1356 (9th Cir. 1984)). Klein has therefore demonstrated a likelihood of irreparable injury in the absence of an injunction.

**[17]** We have also consistently recognized the "significant public interest" in upholding free speech principles, *see Sammartano*, 303 F.3d at 974 (collecting cases), as the "ongoing enforcement of the potentially unconstitutional regulations . . . would infringe not only the free expression interests of [plaintiffs], but also the interests of other people" subjected to the same restrictions. *Id.* In this case, the City's ordinance prohib-

its any potential speaker from placing leaflets on unoccupied parked vehicles, regardless of the type of leaflet or the would-be recipients' willingness to receive the speech. The ordinance thus infringes on the free speech rights not only of Klein, but also of anyone seeking to express their views in this manner in the City of San Clemente. The balance of equities and the public interest thus tip sharply in favor of enjoining the ordinance. As our caselaw clearly favors granting preliminary injunctions to a plaintiff like Klein who is likely to succeed on the merits of his First Amendment claim, we see no reason to remand for further proceedings with respect to Klein's motion in this case.

## CONCLUSION

[18] The record does not support the district court's conclusion that the City's anti-litter ordinance was narrowly tailored to serve a significant government interest. Moreover, the ongoing violation of Klein's right to express his political beliefs constitutes irreparable injury, and the public interest strongly favors enforcing free speech protections. The district court's order denying a preliminary injunction is therefore **REVERSED**, and this case is **REMANDED** to the district court for further proceedings consistent with this opinion, including the issuance of an appropriate injunction.