**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

STEVE KLEIN; HOWARD PUTNAM;
GLEN BIONDI,

              Plaintiffs - Appellants,

    v.

CITY OF LAGUNA BEACH,

          Defendant - Appellee.

No. 09-56430

D.C. No. 8:08-cv-01369-CJC-
MLG

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted February 1, 2010
Pasadena, California

Before: SCHROEDER, FISHER and N.R. SMITH, Circuit Judges.

    Steve Klein, Howard Putnam and Glen Biondi (collectively "Klein") appeal

the denial of their motion for a preliminary injunction barring enforcement of the

City of Laguna Beach's amplified sound ordinance.  We vacate and remand.

---

    [*]This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

We review denial of a preliminary injunction for abuse of discretion. *See, e.g., Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008). The same standard applies regardless of whether the movant seeks to maintain the status quo or to halt an ongoing deprivation of rights. *See Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001). Sound amplification is protected by the First Amendment. *Saia v. New York*, 334 U.S. 558, 561 (1948). Therefore, whereas Klein has "the general burden of establishing the elements necessary to obtain injunctive relief, the City has the burden of justifying the restriction on speech." *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009).

I.

The district court erred in finding that Klein's overbreadth argument was unlikely to succeed on the merits.[1] The amplified speech ordinance is a restriction on the time, place and manner of speech, so under the First Amendment it must be "'justified without reference to the content of the regulated speech,'" "'narrowly tailored to serve a significant governmental interest'" and must "'leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)); *see also Klein*, 584 F.3d at 1200-01 (same standard under California Constitution). The ordinance is content-neutral on its face. Klein does not challenge the significance of the City's interests in peace and tranquility, maintenance of public safety, and protecting individuals from unwanted speech. The ordinance also provides ample alternative channels because Klein retains "the right to conduct [some] desired activity at some point within the

---

[1] Klein has challenged the ordinance under both the federal and California constitutions. Because "federal courts should not decide federal constitutional issues when alternative grounds yielding the same relief are available," *Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 856 (9th Cir. 2004) (citing *Carreras v. City of Anaheim*, 768 F.2d 1039, 1042 (9th Cir. 1985)), we decide this case under the California constitution. However, because "California's 'formulation of the time, place[] and manner test was fashioned from a long line of United States Supreme Court cases,'" we "apply federal time, place and manner standards." *Kuba*, 387 F.3d at 857-58.

forum," even if alternatives would be less effective. *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 655 (1981).

Laguna Beach, however, failed to present evidence that the amplified sound ordinance is narrowly tailored to its interests. Likelihood of success on the merits must be based on admissible evidence in the record, rather than surmise or speculation concerning what evidence could be produced at trial. The evidence before the district court did not support the court's findings, and the district court's characterization of the City's briefs as "uncontested evidence" was erroneous. Arguments are not evidence. *See, e.g.*, *Furman v. Wood*, 190 F.3d 1002, 1006 (9th Cir. 1999).

First, as to Laguna Beach High School, there was no evidence to support a blanket prohibition on the use of a bullhorn within 100 yards of the school 30 minutes before or after the dismissal bell. Government may restrict expression in or around a school "only if the forbidden conduct 'materially disrupts classwork or involves substantial disorder or invasion of the rights of others,'" *Grayned v. City of Rockford*, 408 U.S. 104, 118 (1972) (quoting *Tinker v. Des Moines Ind. Cmty. Sch. Dist*, 393 U.S. 503, 513 (1969)). The City argues that students in California are subject to compulsory attendance laws and they are therefore "practically helpless to escape . . . interference with [their privacy] . . . regardless of whether

4

[they are] sitting in a classroom during regular hours of instruction, participating in after-school programs or walking to a bus." But the City presented no evidence as to how after school activities would actually be disrupted by Klein's proposed speech. Municipalities may protect the privacy of a truly "captive audience," but only students who must remain in the school for extracurricular activities are even arguably captive, as those walking to a car or a bus may simply continue on their way. *See Berger v. City of Seattle*, 569 F.3d 1029, 1054-55 (9th Cir. 2009) (en banc); *cf. Frisby v. Schultz*, 487 U.S. 474, 487 (1988). The same lack of evidence undermines Laguna Beach's argument concerning student privacy.

Traffic safety may also justify limitations on speech, *see Seattle Affiliate of the Oct. 22nd Coal. to Stop Police Brutality, Repression & the Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 807 (9th Cir. 2008), but again the City has not provided evidence that the full breadth of the ordinance is necessary to protect students. Although we understand that traffic and pedestrian safety is an important school interest, the City has the burden to prove that a blanket 100-yard perimeter is narrowly tied to that legitimate interest. *See Kuba v. 1-A Agric. Ass'n*, 387 F.3d 850, 859-60 (9th Cir. 2004) ("[M]erely invoking interests [potentially harmed by a speaker] is insufficient. The government must also show that the

5

proposed communicative activity endangers those interests." (internal citations omitted)). There is no evidence of a "substantial consensus," *Burson v. Freeman*, 504 U.S. 191, 211 (1992), that a uniform protective zone around a school building is necessary to protect students and drivers from distraction. Indeed, any "common sense" argument that use of amplification within 100 yards of schools would generate a crowd that might pose a harmful distraction is undercut by the City's insistence that Klein could stand just off school grounds, speak in a loud voice, hand out leaflets and display graphic signs.

Second, there was similarly no evidence that use of a bullhorn within 100 yards of City Hall would significantly disrupt or impede government activity. *Cf. White v. City of Norwalk*, 900 F.2d 1421, 1424-25 (9th Cir. 1990). Laguna Beach failed to offer evidence that any amplified sound would significantly exceed the ambient noise in the commercial district in which City Hall is located or would penetrate City Hall from a sidewalk 15 to 20 yards from the building. Nor did it show that barring use of amplified sound *before* or *after* City Hall is in use is narrowly tailored to a significant government interest.

Third, there was no evidence to support the district court's finding that a blanket prohibition on amplified sound after 5 p.m. is narrowly tailored to a significant government interest in public tranquility, particularly in light of the

6

significant protections for speech in a public forum.  *See, e.g.*, *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 210 (1975).  For instance, there was no evidence that residential and commercial areas are so interwoven that use of amplified sound in any area would necessarily disturb evening privacy in the home.  The City's use of 32 zoning classifications and four classifications in its noise ordinance is significant evidence to the contrary.  Nor are individuals who are seated while eating or drinking a captive audience for First Amendment purposes.  *See Berger*, 569 F.3d at 1053-55.  Klein's unrebutted submissions concerning ambient noise levels downtown, the general noise ordinance's use of a 9 p.m. transition time and Laguna Beach's continued use of amplified sound at city-sponsored events undermine the City's narrow tailoring arguments.

## II.

The district court also erred in finding that the remaining preliminary injunction requirements favored the City.  If the amplified sound ordinance is overbroad, then Klein continues to suffer an irreparable loss of First Amendment freedoms.  *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.); *Klein*, 584 F.3d at 1208.  The balance of equities thus tips in Klein's favor, *see Klein*, 584 F.3d at 1208, and the public has a fundamental interest in the protection of all

7

people's constitutional rights, *see Sammartano v. First Judicial Dist. Ct.*, 303 F.3d 959, 973 (9th Cir. 2002).

Laguna Beach also failed to establish through admissible evidence that it would endure hardship if challenged provisions of the amplified sound ordinance were enjoined. Even if the amplified sound ordinance had been preliminarily enjoined, the City's general noise ordinance would have remained in effect, prohibiting excessive and disruptive sound of all kinds (including amplified sound). *See* Laguna Beach, Cal., Code §§ 7.25.040, 7.25.060. We recognize that the balance of hardships inquiry is complicated by uncertainty concerning the scope of Klein's challenge to the amplified sound ordinance. *See infra*, Section IV. He argues that the ordinance is overbroad, a facial attack under the First Amendment. *See, e.g.*, *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1034 (9th Cir. 2006). At oral argument, however, Klein stated that the scope of the injunction could be determined at the discretion of the district court. An injunction against all enforcement of an ordinance typically imposes far greater hardship than an injunction forbidding only application to those who have challenged the law. However, in the absence of *any* evidence concerning the hardship that an injunction would cause, the district court's finding was error regardless of the scope of relief Klein seeks.

## III.

The district court also erred in finding on the limited record before it that Klein was not likely to prove that the 5 p.m. restriction was content based as applied, given Laguna Beach's permitted use of amplified sound after 5 p.m. for City-sponsored events. In the absence of guiding standards, municipalities may not permit some government-sponsored speech designated as beneficial to the general welfare while barring other speech. *See Forsyth County, Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992); *Cox v. Louisiana*, 379 U.S. 536, 556-57 (1965); *Santa Monica Food Not Bombs*, 450 F.3d at 1037. On the other hand, limited exemptions from speech restrictions for certain institutional speakers may not constitute content discrimination when the exemption serves purposes unrelated to content and does not reflect disfavor against particular speakers. *See G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1077 (9th Cir. 2006) (citing *Ward*, 491 U.S. at 791). However, the City submitted no evidence of such a content-neutral policy to the district court.

## IV.

"Facial challenges are generally disfavored . . . ." *Seattle Affiliate*, 550 F.3d at 794 (9th Cir. 2008). We are uncertain whether Klein challenges the Laguna Beach amplified sound ordinance as facially overbroad or merely as insufficiently

9

tailored as applied to his particular case, and Klein appears no more sure than we are. *See supra*, Section II. Accordingly, we decline to direct the district court to enter an injunction based on the current record, lest the injunction sweep more broadly than necessary. We vacate and remand on an open record for proceedings consistent with this disposition. The panel will retain jurisdiction over this case.

**VACATED and REMANDED.**