N.R. SMITH, Circuit Judge,
dissenting:
Ray Hrdlicka publishes Crime, Justice & America (“CJA”), a glossy quarterly publication that is distributed for free to prison inmates across the United States. Hrdlicka has chosen a free distribution model of business in which CJA is either given to correctional facilities to be put in common areas on a weekly basis or sent to a list culled from the inmate rolls (which are public record). Apparently, it has been a successful business model. Since its introduction in 2002, over one million copies of CJA have been distributed to inmates across the United States. CJA’s revenue comes from its advertisers, who are primarily bail bonds agents and lawyers. In soliciting advertisers, CJA claims the advertisements will be seen by “hundreds to thousands” of pre-trial inmates.
Hrdlicka now asks this court to assist him in further increasing the circulation of CJA over the objections of two sheriffs who believe that accommodating Hrdlicka’s distribution model would burden the administration of their correctional facilities. While we have previously found that the First Amendment guarantees Hrdlicka *1056 access to prisoners that have requested CJA, there have been no prisoner requests here. Further, there is no precedent suggesting that the First Amendment guarantees Hrdlieka the special right to sue any sheriff who refuses to be a de facto distribution arm of the CJA.
The majority holds that there is a “First Amendment interest in distributing and receiving unsolicited publications.” It cites Klein v. City of San Clemente, 584 F.3d 1196 (9th Cir.2009), for the proposition that the First Amendment protections do not depend on the request of the recipient. Klein, however, explicitly deals with First Amendment restrictions in “public fora.” 584 F.3d at 1200-01. Prisons are not public fora. See United States v. Douglass, 579 F.2d 545, 549 (9th Cir.1978). Instead prisons are one of a few “public institutions which do not perform speech-related functions at all ... [where] the government is free to exclude even peaceful speech and assembly which interferes in any way with the functioning of those organizations.” Id.; see also Adderley v. State of Florida, 385 U.S. 39, 41, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) (“Jails, built for security purposes, are not [public fora].”)
The majority’s statement, that “Turner [v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) ] addresses” any “concerns” regarding the difference between public fora and prisons, is unavailing. As the Supreme Court stated in Turner, “[o]ur task, then ... is to formulate a standard of review for prisoners’ constitutional claims /[.]” 482 U.S. at 85, 107 S.Ct. 2254 (emphasis added). No prisoners’ constitutional claims are implicated in this case. Both before and after Turner, the Supreme Court and this court have uniformly and frequently cautioned against a judicial rule allowing publishers of unsolicited publications a right to demand distribution within prisons. See Morrison v. Hall, 261 F.3d 896, 905 (9th Cir.2001) (“[P]risons can and have adopted policies permitting prisoners to receive [requested] publications, while at the same time, prohibiting prisoners from receiving unsolicited junk mail.”) (emphasis added); Prison Legal News v. Lehman, 397 F.3d 692, 701 (9th Cir.2005) (Distinguishing Jones v. North Carolina Prisoners’ Labor Union, Inc., 433 U.S. 119, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), by stating: “In this case, every piece of mail sent by PLN is sent as a result of a request by the recipient ... it is the fact that a request was made by the recipient ... that is important.”)
No party disputes that we have no request on a part of any prisoner to receive the CJA. Prisoners’ First Amendment rights are not implicated in any way. Instead, Hrdlieka is asking the court to create a special rule, under the First Amendment, protecting his chosen method of distributing CJA to inmates.
Any First Amendment analysis involving prisons must be couched in the understanding that:
[C]ourts are'ill equipped to deal with the increasingly urgent problems of prison administration and reform.... Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have ... additional reason to accord deference to the appropriate prison authorities.
*1057 Turner, 482 U.S. at 84-85, 107 S.Ct. 2254 (discussing Procunier v. Martinez, 416 U.S. 896, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (internal quotation marks and citations omitted). With this understanding, the Supreme Court has held that the press has “no constitutional right of access to prisons or their inmates beyond that afforded the general public.” Pell v. Procunier, 417 U.S. 817, 834, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). While Pell dealt with the press attempting to access prisons in order to gather information, it remains one of the only cases that has dealt with the press’s right of access to prisons when no concurrent right of prisoners has been implicated.[1]
Just as the press had no special right of access to prisons in Pell, here Hrdlicka has no special right to demand a sheriff accept one of his chosen methods of distribution, especially given that a prison is not a public forum. If Hrdlicka would like prisoners to read CJA, he has the option of spending the time and money that all other members of the press spend in order to acquire new readership. Namely, Hrdlicka can advertise both in and outside of the jail in an effort to convince inmates (or noninmates) to request his publication.[2] He can also rely on the word of mouth that many publications take the time to develop among their readers. While this method of acquiring readers may be costly, in the context of prisons, losing “cost advantages does not fundamentally implicate free speech values.” Jones, 433 U.S. at 130-31, 97 S.Ct. 2532; see also Cornelius v. NAACP Legal Defense and Educational Fund, Inc., 473 U.S. 788, 809, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (“The First Amendment does not demand unrestricted access to a non-public forum merely because use of that forum may be the most efficient means of delivering the speaker’s message.”). Hrdlicka has chosen not to advertise to acquire new readership. Instead, he seeks the cost advantage of automatic distribution at any jail he chooses to target. He does not have such a right.
The majority’s analysis under Turner further demonstrates the problem with finding a special First Amendment right for Hrdlicka’s distribution method. By allowing CJA the right to demand unrequested distribution, the majority forces sheriffs either to allow all unrequested mail to reach inmates or to make a case by case determination of the quality of the publication. In discussing the Turner factors, the majority notes “[f]or those who only receive CJA after a significant wait, the bail bond advertising in CJA is of little or no use.” But the Supreme Court has dictated that the value of information to inmates is not a valid consideration. “[T]he Turner test, by its terms, simply does not accommodate valuations of content.” Shaw v. Murphy, 532 U.S. 223, 230, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). The majority would now require valuation of content for any publisher or bulk mail advertiser that asked for access to prisons (if no valuation is to be made then the majority would suggest that all unrequested mail should be allowed unless Turner is satisfied). Such assessment is impossible under Supreme Court precedent.
Instead, the simpler and saner rule is that Hrdlicka has no special First Amendment right to demand that a prison agree to one of his distribution methods. A prison is not a public forum, and a ban on *1058 unrequested publications is a content neutral method for sheriffs to ensure efficient administration of their facilities. A publisher wishing to develop readership among prisoners is free to advertise or develop word of mouth programs to encourage the request of a publication. The publisher is not entitled to use the First Amendment for cost savings in acquiring new readers. Therefore, Hrdlicka does not have a special First Amendment right to demand distribution in prisons, and Sheriffs Reniff and McGinness are entitled to summary judgment.

. Pell also dealt with an inmate's right of access to the press. However, the analysis was done separately from the press's right of access to the prison. See Pell, 417 U.S. at 823-828, 94 S.Ct. 2800.

. No inmate has been refused a requested copy of CJA.